**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| COMMWORKS SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SIA MIKROTĪKLS, <br><br> Defendant. | Civil Action No. 2:25-00252 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant SIA Mikrotīkls ("MikroTik" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Reference |
|---|---|---|---|
| 1. | 7,177,285 | Time Based Wireless Access Provisioning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7177285, <br><br> https://patentcenter.uspto.gov/applications/10961959 |
| 2. | 7,463,596 | Time Based Wireless Access Provisioning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463596, <br><br> https://patentcenter.uspto.gov/applications/11673513 |
| 3. | 7,911,979 | Time Based Access Provisioning System And Process | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7911979, <br><br> https://patentcenter.uspto.gov/applications/12323399 |

|    | Patent No. | Title | Reference |
|----|-----------|-------|-----------|
| 4. | RE44,904 | Method For Contention Free Traffic Detection | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44904 , <br><br>https://patentcenter.uspto.gov/applications/13171882 |
| 5. | 7,027,465 | Method For Contention Free Traffic Detection | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7027465, <br><br>https://patentcenter.uspto.gov/applications/10167986 |
| 6. | 6,891,807 | Time Based Wireless Access Provisioning | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6891807, <br><br>https://patentcenter.uspto.gov/applications/10341847 |

2.    Plaintiff seeks monetary damages.

## PARTIES

3.    CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4.    On information and belief, Defendant SIA Mikrotīkls is a Latvia-based corporation with a principal place of business at Ūnijas iela 2, Riga, LV-1039 LATVIA and a registered address at Aizkraukles iela 23, Riga, LV-1006 LATVIA.  SIA Mikrotīkls may be served at Aizkraukles iela 23, Riga, LV-1006 LATVIA via an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.

5.    On information and belief, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with their products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

6.     CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

7.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, in the State of Texas and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

9.     Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, by contributing to and through its inducement of third parties, and offering its products or services, including those accused of infringement here, to customers and potential customers located in this District. *See List of MikroTik Certified Consultants*, MIKROTIK, *available at* https://mikrotik.com/consultants/northamerica/usa (last visited Feb. 20, 2025) (including Rick Frey as a MikroTik Certified Consultant, located at 743 E. Main Street, Van, Texas 75790, USA); *About Us*, RICK FREY CONSULTING (last visited Feb. 20, 2025), https://rickfreyconsulting.com/about-us/ (stating that "Rick Frey Consulting was started in 2003 providing networking services to our **local East Texas Area**.") (emphasis added); *see also MikroTik Distributors around the world*, MIKROTIK (last visited Feb. 20, 2025), https://mikrotik.com/buy/northamerica (listing ISP Supplies, based in College Station, Texas, and

Hexstar, based in Dallas, Texas as official distributors of MikroTik Hardware and RouterOS).

10.    Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District.  For example, upon information and belief, Defendant has placed its products into the stream of commerce *via* an established certified consultant and official distributors, *see* ¶ 9, *supra*, with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas.  Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to residents and consumers.

11.    Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Eastern District of Texas, and Defendant has committed acts of infringement in the Eastern District of Texas, has conducted business in the Eastern District of Texas, and/or has engaged in continuous and systematic activities in the Eastern District of Texas.

12.    Venus is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).  See also *In re: HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

## THE ACCUSED PRODUCTS

13.    CommWorks repeats and re-alleges the allegations in the paragraphs above as though

fully set forth in their entirety.

14.    Defendant use, cause to be used, manufacture, provide, supply, or distribute one or more MikroTik Systems-on-Chips (SoCs), and/or devices, including, but not limited to the "Accused Products," set forth below:

- MikroTik SoCs, and/or devices supporting **Wi-Fi Multimedia and 802.11-2007+** functionality, including

    o **MikroTik hEX Series,**

    o **hAP Series,**

    o **mAP Series,**

    o **cAP Series,**

    o **wAP Series,**

    o **KNOT Series,**

    o **L009UiGS-2HaxD-IN Series,**

    o **Chateau Series,**

    o **Audience Series,**

    o **LtAP Series,**

    o **CME Gateway Series,**

    o **NetMetal Series,**

    o **SXTsq Series,**

    o **LDF 5 Series,**

    o **Groove Series,**

    o **LHG Series,**

    o **OmniTIK Series,**

- o **BaseBox Series,**

- o **NetBox Series,**

- o **Metal 52 Series,**

- o **QRT Series,**

- o **mANTBox Series, and**

- o **RB4011 Series**

- MikroTik devices supporting **Wi-Fi Protected Setup (WPS)** functionality, including:

- o **MikroTik hEX Series,**

- o **hAP Series,**

- o **mAP Series,**

- o **cAP Series,**

- o **wAP Series,**

- o **KNOT Series,**

- o **L009UiGS-2HaxD-IN Series,**

- o **Chateau Series,**

- o **Audience Series,**

- o **LtAP Series,**

- o **CME Gateway Series,**

- o **NetMetal Series,**

- o **SXTsq Series,**

- o **LDF 5 Series,**

- o **Groove Series,**

- o **LHG Series,**

- o **OmniTIK Series,**

- o **BaseBox Series,**

- o **NetBox Series,**

- o **Metal 52 Series,**

- o **QRT Series,**

- o **mANTBox Series,**

- o **RB4011 Series with Wi-Fi Protected Setup (WPS) functionality, including, as a non-limiting example, hEX lite RB750r2,**

- o **hAP ax² C52iG-5HaxD2HaxD-TC,**

- o **hAP ax³ C53UiG+5HPaxD2HPaxD,**

- o **hAP lite RB941-2nD-TC,**

- o **mAP lite RBmAPL-2$^{nD}$,**

- o **mAP RBmAP2nD,**

- o **cAP ax cAPGi-5HaxD2HaxD,**

- o **wAP ac RBwAPG-5HacD2HnD,**

- o **KNOT RB924i-2nD-BT5&BG77,**

- o **L009UiGS-2HaxD-IN,**

- o **Chateau LTE6-US D53G-5HacD2HnD-TC&EG06-A,**

- o **Audience RBD25G-5HPacQD2HPnD,**

- o **LtAP mini LTE kit (2024) RB912R-2nD-LTm&EC200A-EU,**

- o **wAP ac LTE kit (2024) wAPGR-5HacD2HnD&EC200A-EU,**

- o **CME Gateway CME22-2n-BG77,**

- o **NetMetal ax L23UGSR-5HaxD2HaxD-NM,**

- o **SXTsq 5 ac,**

- o **RBSXTsqG-5acD,**

- o **LDF 5 RBLDF-5nD,**

- o **GrooveA 52 ac RBGrooveGA-52HPacn,**

- o **LHG 5 RBLHG-5nD,**

- o **OmniTIK 5 PoE ac RBOmniTikPG-5HacD,**

- o **BaseBox 5 RB912UAG-5HPnD-OUT,**

- o **NetBox 5 ax L11UG-5HaxD-NB,**

- o **Metal 52 ac RBMetalG-52SHPacn,**

- o **QRT 5 RB911G-5HPnD-QRT,**

- o **mANTBox ax 15s L22UGS-5HaxD2HaxD-15S,**

- o **hAP lite RB941-2$^{nD}$,**

- o **Chateau LTE18 ax S53UG+5HaxD2HaxD-TC&EG18-EA,**

- o **RB4011,**

- o **RB4011iGS+5HacQ2HnD-IN, and**

- o **wAP LTE kit (2024) RB4011iGS+5HacQ2HnD-IN**

15. On information and belief, Defendant provides information and assistance to their customers to enable them to use the Accused Products in an infringing manner as described below.

16. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

17. By letter dated February 2, 2022, addressed to John Tully, Chief Operating Officer of MikroTik (the "Notice Letter"), Defendant received notice of its infringement of CommWorks' patents, including the '807, '285, '596, and '979 patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,177,285**

18.    CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

19.    The USPTO duly issued U.S. Patent No. 7,177,285 (the "'285 patent") on February 13, 2007, after full and fair examination of Application No. 10/961,959 which was filed October 8, 2004.  The '285 patent is entitled "Time Based Wireless Access Provisioning."

20.    CommWorks owns all substantial rights, interest, and title in and to the '285 patent, including the sole and exclusive right to prosecute this action and enforce the '285 patent against infringers and to collect damages for all relevant times.

21.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '285 patent.

22.    The claims of the '285 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.  The written description of the '285 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

23.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a

control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning. '285 Patent at col. 3:13-26. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:27-36.

24.    The invention of the '285 Patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:37-41. The invention of the '285 Patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49. The invention of the '285 Patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '285 Patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

25.    Defendant has directly infringed the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

---

26.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '285 patent.

27.     On information and belief, Defendant has infringed the '285 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the DrayTek VigorAP 962C (included in the "Accused Products").

28.     For example, Defendant has infringed at least claim 1 of the '285 Patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for provisioning between a wireless device and a network.  The process for provisioning comprises the step of tracking an operating parameter of the wireless device within a service area, wherein the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device.  The process for provisioning further comprises the step of initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval.

29.     Defendant has also indirectly infringed the '285 patent by inducing others to directly infringe the '285 patent.  Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '285 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '285 patent, including, for example, claim 1 of the '285 patent. Such steps by Defendant includes, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions

that guide users to use the Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '285 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '285 patent.

30.     Defendant has also indirectly infringed by contributing to the infringement of the '285 patent. Defendant has contributed to the direct infringement of the '285 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '285 patent, including, for example, claim 1 of the '285 patent. The special features constitute a material part of the invention of one or more of the claims of the '285 patent and are not staple articles of commerce suitable for substantial non-infringing use.

31.     Defendant had knowledge of the '285 patent when it received the Notice Letter in February of 2022.

32.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

33.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

34.     Defendant's direct infringement of one or more claims of the '285 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

35.     Defendant's direct infringement of one or more claims of the '285 patent is, has been,

and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

36.      CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,463,596

37.      CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

38.      The USPTO duly issued U.S. Patent No. 7,463,596 (the "'596 patent") on December 9, 2008, after full and fair examination of Application No. 11/673,513, which was filed on February 9, 2007.  The '596 patent is entitled "Time Based Wireless Access Provisioning."

39.      CommWorks owns all substantial rights, interest, and title in and to the '596 patent, including the sole and exclusive right to prosecute this action and enforce the '596 patent against infringers and to collect damages for all relevant times.

40.      CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '596 patent.

41.      The claims of the '596 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

42.      The written description of the '596 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '596 Patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

44.    The invention of the '596 Patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '596 Patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:42-49.  The invention of the '596 Patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of

power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '596 Patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

45. Defendant has directly infringed the '596 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

46. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '596 patent.

47. On information and belief, Defendant has infringed the '596 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the DrayTek VigorAP 962C (included in the "Accused Products").

48. For example, Defendant, using the Accused Products, has infringed at least claim 1 of the '596 Patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for associating devices. The process for associating devices comprises the step of tracking an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device. The process for associating devices further comprises the step of automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval.

49. Defendant has also indirectly infringed the '596 patent by inducing others to directly

infringe the '596 patent.  Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '596 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '596 patent, including, for example, claim 1 of the '596 patent. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant has performed these steps, which constitute induced infringement with the knowledge of the '596 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '596 patent.

50.    Defendant has also indirectly infringed by contributing to the infringement of the '596 patent.  Defendant has contributed to the direct infringement of the '596 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '596 patent, including, for example, claim 1 of the '596 patent.  The special features constitute a material part of the invention of one or more of the claims of the '596 patent and are not staple articles of commerce suitable for substantial non-infringing use.

51.    Defendant had knowledge of the '596 patent when it received the Notice Letter in February of 2022.

52.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

53.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

54.    Defendant's direct infringement of one or more claims of the '596 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

55.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,911,979

56.    CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

57.    The USPTO duly issued U.S. Patent No. 7,911,979 (the "'979 patent") on March 22, 2011, after full and fair examination of Application No. 12/323,399 which was filed on November 25, 2008.  The '979 patent is entitled "Time Based Access Provisioning System And Process."  A Certificate of Correction was issued on July 19, 2011.

58.    CommWorks owns all substantial rights, interest, and title in and to the '979 patent, including the sole and exclusive right to prosecute this action and enforce the '979 patent against infringers and to collect damages for all relevant times.

59.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the '979 patent.

60.    The claims of the '979 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

61.    The written description of the '979 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

62.    For example, at the time of the invention wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '979 Patent at col. 3:19-31.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:32-41.

63.    The invention of the '979 Patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:42-46.  The invention of the

'979 Patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:47-53. The invention of the '979 Patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:54-62. Moreover, the structure of the devices described in the '979 Patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

64. Defendant has directly infringed the '979 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

65. Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '979 patent.

66. On information and belief, Defendant has infringed the '979 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the DrayTek VigorAP 962C (included in the "Accused Products").

67. For example, Defendant, using the Accused Products, has infringed at least claim 1 of the '979 patent by making, using, offering to sell, selling, and/or importing the Accused Products,

which perform a provisioning process performed by a provisioning system having provisioning logic. The provisioning process performed comprises tracking, by the provisioning logic, an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device. The provisioning process performed in the Accused Products further comprises sending a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval.

68.     Defendant has also indirectly infringed the '979 patent by inducing others to directly infringe the '979 patent. Defendant has induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '979 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '979 patent, including, for example, claim 1 of the '979 patent. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '979 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '979 patent.

69.     Defendant has also indirectly infringed by contributing to the infringement of the '979 patent. Defendant has contributed to the direct infringement of the '979 patent by its personnel,

contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '979 patent, including, for example, claim 1 of the '979 patent. The special features constitute a material part of the invention of one or more of the claims of the '979 patent and are not staple articles of commerce suitable for substantial non-infringing use.

70. Defendant had knowledge of the '979 patent when it received the Notice Letter in February of 2022.

71. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of CommWorks' patent rights.

72. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

73. Defendant's direct infringement of one or more claims of the '979 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

74. CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. RE44,904

75. CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

76.    The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014.  The '904 patent is entitled "Method For Contention Free Traffic Detection."

77.    CommWorks owns all substantial rights, interest, and title in and to the '904 patent, including the sole and exclusive right to prosecute this action and enforce the '904 patent against infringers and to collect damages for all relevant times.

78.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

79.    The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

80.    The written description of the '904 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

81.    For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all."  '904 Patent at col. 2:9-10.  Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:63-2:2.  This measure was very

complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols. *Id.* at col. 2:5-8. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge. *Id.* at col. 2:8-14. Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP). *Id.* Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:20-25.

82.     The invention of the '904 Patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:29-32, 3:2-4, 3:52-53. The methods of the invention of the '904 Patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:62-65. The methods of the invention of the '904 Patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 3:5-8, 3:14-21. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:22-31.

83.     Defendant has directly infringed the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

84.     Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '904 patent.

85.     On information and belief, Defendant, using the Accused Products, has infringed the '904 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia ("WMM") and/or 802.11-2007+ compatible chips, such as, for example, the DrayTek VigorAP 962C (included in the "Accused Products").

86.     For example, Defendant, using the Accused Products, has infringed at least claim 1 of the '904 patent by performing a method comprising extracting a bit pattern from a predetermined position in a frame.  The method further comprises comparing said extracted bit pattern with a search pattern.  The method further comprises identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  The method further comprises forwarding said received frame to a high priority queue in case said frame is detected to be a high priority frame during a special period for sending priority traffic.  The method further comprises adjusting the duration of the special period for sending priority traffic according statistic information regarding sent priority frames.

87.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 7,027,465

88.     CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

89.     The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986 which was filed on June 11, 2002.  The '465 patent is entitled "Method For Contention Free Traffic Detection."

90.     CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce the '465 patent against infringers and to collect damages for all relevant times.

91.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '465 patent.

92.     The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

93.     The written description of the '465 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.     For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all."  '465 Patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers,

until the right field in the header had been found.  *Id.* at col. 1:53-59.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 1:62-65.  All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 1:66-2:4.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP).  *Id.*  Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority.  *Id.* at col. 2:11-15.

95.     The invention of the '465 Patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP.  *Id.* at col. 2:19-23, 2:60-62, 3:43.  The methods of the invention of the '465 Patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols.  *Id.* at col. 2:53-56.  The methods of the invention of the '465 Patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device.  *Id.* at col. 2:63-66, col. 3:5-11.  A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network.  *Id.* at col. 3:12-21.

96.    Defendant has directly infringed the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

97.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent.

98.    On information and belief, Defendant, using the Accused Products, has infringed the '465 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia (WMM) and/or 802.11-2007+ compatible chips and devices, such as, for example, the DrayTek VigorAP 962C (included in the "Accused Products").

99.    For example, Defendant has infringed at least claim 1 of the '465 patent by performing a method for detecting priority of data frames in a network.  The method for detecting priority of data frames comprises the step of extracting a bit pattern from a predetermined position in a frame. *Id.*  The method for detecting priority of data frames further comprises the step of comparing said extracted bit pattern with a search pattern.  The method for detecting priority of data frames further comprises the step of identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  In the method for detecting priority of data frames, the predetermined position in said frame is defined by the offset of said bit pattern in said frame.

100.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI:  INFRINGEMENT OF U.S. PATENT NO. 6,891,807

101.    CommWorks repeats and re-alleges the allegations in the paragraphs above as though

fully set forth in their entirety.

102.    The USPTO duly issued U.S. Patent No. 6,891,807 (the "'807 patent") on May 10, 2005, after full and fair examination of Application No. 10/341,847 which was filed on January 13, 2003.  The '807 patent is entitled "Time Based Wireless Access Provisioning."

103.    CommWorks owns all substantial rights, interest, and title in and to the '807 patent, including the sole and exclusive right to prosecute this action and enforce the '807 patent against infringers and to collect damages for all relevant times.

104.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '807 patent.

105.    The claims of the '807 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

106.    The written description of the '807 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

107.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a

control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning. '807 Patent at col. 3:5-18. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:19-28.

108.    The invention of the '807 Patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:29-33. The invention of the '807 Patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:34-41. The invention of the '807 Patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:42-50. Moreover, the structure of the devices described in the '807 Patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

109.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 17 of the '807 patent.

---

110.    On information and belief, Defendant has infringed the '807 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible consumer electronics chips, such as, for example, the DrayTek VigorAP 962C (included in the "Accused Products").

111.    For example, Defendant has infringed at least claim 17 of the '807 Patent by making, using, offering to sell, selling, and/or importing the Accused Products, which include a time based network access provisioning system between a wireless device and a network.  The time based network access provisioning system comprises a network access point connected to the network, the network access point comprising logic for tracking operation of the wireless device.  The time based network access provisioning system further comprises logic for provisioning the wireless device if the operation of the wireless device occurs within an activatable time interval.

112.    Defendant had notice of the '807 patent when it received the Notice Letter in February of 2022.

113.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

114.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

115.    Defendant's direct infringement of one or more claims of the '807 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

116.    CommWorks has been damaged as a result of the infringing conduct by Defendant

alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

117.    CommWorks hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

118.    CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

    a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

    b.    Judgment that Defendant account for and pay to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

    c.    Judgment that Defendant's infringements of the '285, '596, '979, and '807 patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

    d.    Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

    e.    That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

    f.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>March 3, 2025</u>                    Respectfully submitted,

                                   By:<u>*/s/ James F. McDonough, III*</u>

                                   James F. McDonough, III (GA 117088)*
                                   **ROZIER HARDT MCDONOUGH PLLC**
                                   659 Auburn Avenue NE, Unit 254
                                   Atlanta, Georgia 30312
                                   Telephone: (404) 564-1866
                                   Email: jim@rhmtrial.com

                                   Jonathan L. Hardt (TX 24039906)*
                                   **ROZIER HARDT MCDONOUGH PLLC**
                                   712 W. 14th Street, Suite A
                                   Austin, Texas 78701
                                   Telephone: (210) 289-7541
                                   Email: hardt@rhmtrial.com

                                   C. Matthew Rozier (CO 46854)*
                                   Kenneth A. Matuszewski (IL 6324308)*
                                   **ROZIER HARDT MCDONOUGH PLLC**
                                   1500 K Street, 2nd Floor
                                   Washington, District of Columbia 20005
                                   Telephone: (404) 779-5305; (202) 316-1591
                                   Telephone: (708) 870-5803
                                   Email: matt@rhmtrial.com
                                   Email: kenneth@rhmtrial.com

          ***Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC***

                                          * Admitted to the Eastern District of Texas

<u>Attachments</u>

- Civil Cover Sheet
- Proposed Summons